UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BRUCE HONEYCUTT aka ASTARYANNA HONEYCUTT,<br><br>    Plaintiff,<br><br>v.<br><br>PENNEY OPCO LLC,<br><br>    Defendant. | Case No. 6:24-cv-01211-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Plaintiff Astaryanna Honeycutt ("Plaintiff") brings this action against Defendant Penney OpCo LLC ("Defendant") alleging state law claims of employment discrimination, hostile work environment, and retaliation. Before the Court is Defendant's Motion to Dismiss Plaintiff's third claim for relief for retaliation pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 9. For the reasons below, Defendant's motion is denied.

### BACKGROUND

For the purposes of this motion to dismiss, the following facts alleged by Plaintiff are assumed to be true.

Defendant does business as the department store chain, JC Penney. Compl. ¶ 4, ECF No. 1. Plaintiff is a transgender female. *Id.* at ¶ 9. Her chosen first name is Astaryanna, or Star, and

her pronouns are she, her, they, and them. *Id.* at ¶¶ 9, 12. On July 19, 2023, Plaintiff was hired to work in the beauty department at the JC Penney location in Eugene, Oregon. *Id.* at ¶ 10. After two days of training, Plaintiff was assigned to work in the salon. *Id.*

On her first day of employment, Plaintiff informed her manager of her pronouns. *Id.* at ¶ 12. Her manager responded by saying, "I just can't do that," or words to that effect. *Id.* After that interaction, Plaintiff's manager used the incorrect pronouns of "he" and "him" to refer to Plaintiff daily for the duration of Plaintiff's employment. *Id.* at ¶ 13. Plaintiff corrected her manager, but the manager continued to use the incorrect pronouns. *Id.* In addition, despite Plaintiff informing her manager and coworkers of her chosen name, they continuously used Plaintiff's "dead name." *Id.*

While Plaintiff was working for Defendant, her manager—who had worked for Defendant for 19 years—informed Plaintiff that she had previously "blacklisted" other stylists who she didn't like from being hired at any JC Penney location. *Id.* at ¶ 14. Plaintiff felt that her manager's statement was an attempt to intimidate Plaintiff, and as a result, Plaintiff did feel intimidated. *Id.* On another occasion, Plaintiff's manager called her to see why Plaintiff was late for her shift, and her manager said, "I was hoping you were in a ditch," or words to that effect. *Id.* at ¶ 15. On a different day, Plaintiff left work early because she was feeling sick. *Id.* at ¶ 18. As she was leaving, one of her coworkers said, "Maybe I should say I'm not feeling well so I can leave early," or words to that effect. *Id.* Plaintiff's manager heard the comment and laughed. *Id.* Plaintiff left the store crying. *Id.* The next day, Plaintiff's manager told her, "That's just how [the stylist] is; you just have to get used to it," or words to that effect. *Id.*

On July 27, 2023, Plaintiff reported her manager's continued use of incorrect pronouns and name to the assistant store manager/human resources manager of the store. *Id.* at ¶ 19.

Plaintiff also reported that she was being bullied by her manager and coworkers, and that she feared being retaliated against. *Id.* The assistant store manager/human resources manager assured Plaintiff that retaliation was not allowed under Defendant's policy. *Id.* Plaintiff acknowledged the policy but expressed concern about her manager's comment regarding past "blacklisting" of stylists she did not like. *Id.* At the end of the meeting, Plaintiff terminated her employment, stating that she had been enduring a hostile work environment and that her mental health was suffering as a result, leaving her no reasonable alternative but to leave. *Id.*

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Federal Ins. Company*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers,* 869 F.3d 795 at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Defendant moves to dismiss Plaintiff's retaliation claim, arguing that Plaintiff has failed to allege facts sufficient to state any element of retaliation.

Or. Rev. Stat. § ("ORS") 659A.030(1)(f) provides that it is unlawful for "any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

A retaliation claim under ORS 659A.030(1)(f) has three elements: (1) the employee-plaintiff engaged in a legally protected activity, (2) the employer-defendant subjected the employee-plaintiff to an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action. *Summerfield v. Or. Liquor Control Comm'n*, 366 Or. 763, 782 (2020); *Folkerson v. Circus Circus Enters.*, 107 F.3d 754, 755-56 (9th Cir. 1997).

A company-employer can be liable for a supervisor's wrongful conduct under ORS 659A.030. *H. K. v. Spine Surgery Ctr. of Eugene, LLC*, 305 Or. App. 606, 614 (2020) (citation omitted); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998).[1] Indeed, "for purposes of

---

[1] Because ORS 659A.030(1)(f) is substantially similar to Title VII's antiretaliation provision, 42 USC section 2000e-3(a), courts may rely on case law applying either statute. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 (9th Cir. 1993); *Portland State Univ. v. Portland State Univ.*, 352 Or. 697, 711 (2012).

discrimination by an 'employer' under ORS 659A.030, the act of an agent, who acts within [their] scope of authority in a discriminatory fashion, constitutes an act of the employer." *H. K.*, 305 Or. App. at 614. The U.S. Supreme Court has ruled that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

### A. Legally Protected Activity

The first element of an ORS 659A.030(1)(f) retaliation claim requires Plaintiff to have engaged in a legally protected activity. An employee's opposition "directed at an unlawful employment practice of an employer" is a legally protected activity. *Folkerson*, 107 F.3d at 756. "It is unnecessary that the employment practice actually be unlawful; opposition thereto is protected when it is based on a reasonable belief that the employer has engaged in an unlawful employment practice." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001) (internal quotations, emphasis, and citation omitted). Plaintiff argues that she has alleged her engagement in two types of legally protected activity: (1) by repeatedly correcting her manager about her pronouns, and (2) making a good faith report of her manager's conduct to the store's assistant manager/human resources manager.

In response to Plaintiff's first theory, Defendant argues that Plaintiff's Complaint does not allege facts sufficient to show that Plaintiff repeatedly corrected her manager, and alternatively, that repeatedly correcting one's manager about their pronouns is not a protected activity.

Defendant argues that Plaintiff's Complaint only states that Plaintiff corrected her manager one time, which is not enough to allege a legally protected activity under ORS 659A.030(1)(f). Defendant contends that Plaintiff only corrected her manager once, and that

Page 5 — OPINION AND ORDER

establishes that the manager's misuse of pronouns was merely accidental. Plaintiff's Complaint alleges:

> During the first day of Plaintiff's employment, she informed her manager that her pronouns are she, her, they, them. Plaintiff's manager responded, "I just can't do that" or words to that effect. . . . Throughout Plaintiff's employment, Plaintiff's manager misgendered Plaintiff on a daily basis, using the pronouns 'he' and 'him' to refer to Plaintiff. Plaintiff corrected her manager, but her manager continued using the incorrect pronouns.

Pl.'s Compl. ¶ 13. These facts, construed in the light most favorable to Plaintiff, allege that Plaintiff corrected her manager repeatedly—every time she was misgendered—and after each correction her manager would continue to use incorrect pronouns. In addition, her manager's initial statement that she could not use Plaintiff's correct pronouns supports her contention that the repeated misgendering was intentional, rather than accidental. Plaintiff's Complaint therefore plausibly alleges that she was opposing repeated and intentional misgendering, rather than merely correcting an innocent mistake once.

      Defendant alternatively argues that Plaintiff repeatedly correcting her manager's misgendering was not a legally protected activity because it did not constitute opposition to an unlawful employment practice. Defendant first points to case law that states, "[A] simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an unlawful employment practice." *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (internal quotations omitted). However, Plaintiff does not merely allege that her manager was personally bigoted. Rather, she alleges that her manager was repeatedly misgendering her despite being corrected. Such conduct went beyond the manager's personal beliefs because it was specifically directed at, and opposed by, Plaintiff.

      Construing the alleged facts in the light most favorable to Plaintiff, the repeated act of correcting her manager about her pronouns alleges opposition to an unlawful employment

practice. Specifically, the Court finds that correcting an employer's repeated use of incorrect pronouns is a sufficient allegation of opposition to discrimination based on one's gender identity under ORS 659A.030 to allege a legally protected activity.

Accordingly, Plaintiff has alleged facts that, taken as true and construed in the light most favorable to her, state that she engaged in a legally protected activity when she repeatedly corrected her manager about her pronouns. Because these allegations are sufficient to establish that Plaintiff engaged in a protected activity, the Court need not evaluate Plaintiff's alternative theory regarding her good faith report to the store's assistant manager/human resources manager.

### B.     Adverse Employment Action

Next, a plaintiff asserting a retaliation claim must plead that the employer subjected them to an adverse employment action. "[A]n adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson,* 217 F.3d 1234, 1237 (9th Cir. 2000). Plaintiff alleges two kinds of adverse employment actions here: (1) a hostile work environment, and (2) constructive discharge.

First, Plaintiff alleges that she was subjected to a hostile working environment sufficient to constitute an adverse employment action. To determine whether a work environment is hostile, courts look to the totality of circumstances, including the frequency and severity of the discriminatory conduct and "whether it unreasonably interferes with an employee's work performance." *Id.* (quotations omitted). The Ninth Circuit has held that "[r]epeated derogatory or humiliating statements . . . can constitute a hostile working environment." *Id.*

Here, intentionally misgendering a transgender person could reasonably humiliate them and interfere with their work performance. In addition, Plaintiff alleged that the manager intimidated her by referencing the other stylists she had "blacklisted," and that the manager once said that she was "hoping [Plaintiff was] in a ditch." Especially when viewing the allegations in

the light most favorable to Plaintiff, the totality of the alleged circumstances supports a claim that Plaintiff was subjected to a hostile work environment.

Second, Plaintiff alleges the adverse employment action of constructive discharge. Under Oregon law, constructive discharge occurs when an employee leaves their employment because of intolerable working conditions. *Stupek v. Wyle Labs. Corp.*, 327 Or. 433, 439 (1998). Plaintiff's Complaint stated that Plaintiff "had no reasonable alternative but to end her employment," because she "could no longer endure the hostile work environment and her mental health was suffering as a result of the treatment she endured," with the treatment she endured being the repeated misgendering, bullying, and fear of retaliation. Compl. ¶ 19. Such alleged facts, construed in the light most favorable to Plaintiff, are enough to support a claim that she was constructively discharged.

Defendant's arguments in opposition to the "adverse employment action" (i.e. "retaliation") element are solely focused on Plaintiff's report to the assistant store manager/human resources manager. Those arguments do not provide a basis to reject Plaintiff's allegations of a hostile work environment and constructive discharge as discussed above. Accordingly, Plaintiff has plausibly alleged this element.

C. **Causation**

The third element of a retaliation claim requires a causal connection between the protected activity and the alleged adverse employment action, meaning the plaintiff "would have been treated differently in the absence of the unlawful motive," *Lacasse v. Owen*, 278 Or. App. 24, 32-33 (2016) (citations omitted). A causal connection can be established indirectly when "the protected activity followed closely by discriminatory treatment," *Meyer v. State*, 292 Or. App. 647, 682 (2018) (internal quotations, emphasis, and citation omitted).

Here, the facts alleged, construed in the light most favorable to Plaintiff, show that the protected activity was followed very closely—within nine days—by the creation of a hostile work environment and constructive discharge. In addition, because Plaintiff alleged that she worked hard and was good at her job, she has plausibly alleged that she would not have been subjected to the adverse employment actions in the absence of a retaliatory motive. Thus, Plaintiff has alleged facts sufficient to support the conclusion that her engagement in a protected activity was causally connected to adverse employment actions.

As with the previous element, Defendant's argument on the causation element presupposes that opposing misgendering is not a protected activity, instead focusing solely on Plaintiff's report to the assistant store manager/human resources manager. These arguments do not provide a basis to find that Plaintiff has inadequately pled a causal connection.

In sum, Plaintiff has sufficiently alleged all three elements of an ORS 659A.030(1)(f) unlawful retaliation claim.

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (ECF No. 9) is DENIED.

DATED this 27th day of November 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge